UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  5:23-mj-1003 |
| | ) | |
| Plaintiff, | ) | JUDGE BRIDGET MEEHAN BRENNAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | AMANDA M. KNAPP |
| JUSTIN M. SMITH, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | |
| | ) | |

This matter is before the Court upon the Motion to Revoke Magistrate Judge's Order Granting Bond, which was filed by the government on January 23, 2023.  (Doc. No. 17.)  On January 25, 2023, Defendant Justin M. Smith ("defendant" or "Smith") opposed the government's motion (Doc. No. 20), and the government timely replied (Doc. No. 21).  For the reasons stated below, the government's motion is GRANTED, and the defendant is hereby remanded to the custody of the U.S. Marshal for pretrial detention.

**I. Background**

**A. Complaint and Affidavit**

On January 6, 2023, a deputy with the Portage County Sheriff's Office saw a Ford SUV violate multiple traffic laws and conducted a traffic stop.  (Doc. No. 1-1 at 3.)[1]  Defendant was identified as the driver and another occupant was in the vehicle.[2]  (*Id.*)  During the traffic stop, a narcotics K-9 alerted on the SUV and a probable cause search followed.  (*Id.*)  A loaded .25

---

[1] Record citations are to the electronically stamped CM/ECF document and page number, rather than any internal pagination.

[2] Defendant's girlfriend was the other occupant in the vehicle. (Doc. No. 16 at 74.)

caliber pistol was found in the driver's side door storage compartment. (*Id.*) An additional 39 rounds of ammunition were found in the truck area of the SUV. (*Id.*) No narcotics were found.

That same day, and after knowingly consenting to a custodial interview, Smith made the following statements:

1. The firearm was not his, but Smith obtained it about six months prior.
2. He knew the firearm was in the vehicle.
3. Smith paid approximately $250 for the firearm, with the ammunition purchased separately.

(*Id.* at 3-4.)

### B. Detention and Hearing Order

On January 17, 2023, the court held a detention hearing with both government counsel and defense counsel proceeding by proffer. (Doc. No. 16.) The government stated the nature of the charged offense and summarized Smith's admissions to federal agents. (*Id*. at 74.)

With respect to the Pretrial Services Report ("Report"), the government noted that the Report inadvertently omitted Smith's 2013 conviction for aggravated robbery, a felony of the first degree. (*Id*. at 75.) Smith was sentenced to nine years for that offense. (*Id.*) He was judicially released in March 2021. (*Id.*) In summarizing Smith's criminal history, the government referenced Smith's additional convictions for robbery, aggravated menacing and assault, aggravated menacing, battery, failure to comply, driving under the influence, and drug trafficking. (*Id*. at 75-76.) The government noted that Smith's criminal history revealed numerous instances of Smith failing to appear and resulted in 17 individual bench warrants issued against him. (*Id.* at 76.)

Defense counsel submitted two exhibits. (*Id.*) The first exhibit included photographs of Smith's degree and graduation ceremony as well as one of him working at Edwins Restaurant.

(*Id.* at 76-7.)  The last page was the judgment entry from the Portage County Court of Common Pleas.  (*Id.* at 77.)  Smith's second exhibit was the docket entry from Smith's 2013 Aggravated Robbery offense.  (*Id.*)

Smith's girlfriend of 20 years was present and had previously advised defense counsel that Smith could resume living with her if released.  (*Id.*)  They have been living together since March 2021.  (*Id.*)  They have one child together, and she is expecting their second.  (*Id.*)  It is a high-risk pregnancy.  (*Id.* at 78.)  She does not drive and relies on Smith for transportation.  (*Id.*)

With respect to employment, Smith began working for Edwins Restaurant in or around March 2021.  (*Id.* at 78.)  He was promoted to a management position.  (*Id.*)  Smith obtained a commercial driver's license ("CDL") and, in late 2021, began working as a garbage truck driver for Kimble.  (*Id.*)  He worked up to 70 hours per week at $19 per hour.  (*Id.*)

Addressing Smith's 2013 aggravated robbery conviction, defense counsel explained that Smith was judicially released nearly two years early for good behavior.  (*Id.* at 79.)  His three-year term of probation was reduced for the same reason.  (*Id.*)  The judicial officer who oversaw Smith's probation invited Smith to speak to other returning citizens.  (*Id.*)

In rebuttal, the government addressed Smith's contention that he could resume living with his girlfriend.  (*Id.* at 80.)  Smith had advised federal agents that his girlfriend had a permit to carry concealed weapons and, in fact, kept other firearms at the home they shared.  (*Id.*)  For the government, this illustrated Smith's proximity to firearms since his release from prison.  (*Id.*)

The Pretrial Services officer was invited to speak about the Report.  (*Id.* at 81.)  The officer explained that Smith was granted judicial release in August 2021.  (*Id.*)  He was moved to unsupervised probation in September 2021.  (*Id.*)  In November 2021, he was given authorization to pursue a CDL license.  (*Id.*)  Smith's supervision was terminated on February 28, 2022.  (*Id.*)

The Pretrial Services officer reiterated the recommendation that Smith be detained.  (*Id.*)

In argument, the government noted that this offense involved possession of a firearm, an aggravating factor listed in Title 18, United States Code, Section 3142(g)(1).  (*Id.* at 82.)  And, in this instance, the firearm was loaded and easily accessible to him while he drove the vehicle.  (*Id.*)  The government's argument regarding the weight of the evidence favoring detention focused largely on Smith's criminal history.  (*Id.*)  The government argued that there was "significant evidence of [Smith's] inability to comply with the Court's orders and his risk of non-appearance," including his repeated return to criminal conduct.  (*Id.* at 82-4.)  With respect to Smith's history and characteristics, the government acknowledged the steps Smith has taken to learn his trade and Smith's successful release from probation in 2021.  (*Id.* at 83.)  Notwithstanding, the government argued that Smith knowingly possessed a firearm and admitted to living in a home with multiple firearms available to him.  (*Id.*)  In conclusion, the government stated that no condition or set of conditions could assure Smith's appearance at future proceedings or the safety of others.  (*Id.* at 83-4.)

In response, defense counsel argued that conditions of house arrest and location monitoring would secure his appearance and the safety of others.  (*Id.* at 84.)  Counsel correctly noted that this was not a presumption case, and he argued that the circumstances of this offense demonstrate his compliance, namely that he did not run from the police on January 6, 2023.  (*Id.*)  As for Smith's personal history and characteristics, counsel highlighted his employment, the state of his girlfriend's pregnancy, and his stable residence.  (*Id.* at 85.)  As for Smith's criminal history, counsel argued that his record shows he has not had a "single failure to appear since 2008," and his more recent compliance with court orders led to judicial release and the early termination of supervision.  (*Id.* 85-7.)  Counsel urged the court to consider Smith's "more recent

behavior which is a better indicator of how he would be on bond if this Court were to grant it." (*Id.* at 87.) With respect to the presence of firearms in Smith's home, counsel stated that those firearms could be removed, and that Smith's girlfriend would be subject to any bond conditions that applied to Smith. (*Id.* at 87-8.) Counsel did not respond to the government's suggestion that the presence of firearms in Smith's home demonstrates that he has been in possession of firearms, even constructively, since his release from prison.

At the conclusion of the detention hearing, the Magistrate Judge set forth her evaluation of the relevant factors and concluded that the government failed it meet its burden of establishing either risk of flight by a preponderance of the evidence or danger to others by clear and convincing evidence. The Magistrate Judge recognized that a loaded firearm is "an inherently dangerous item." (*Id.* at 90.) The Magistrate Judge also recognized Smith's criminal history included violent offenses and a large number of failures to appear, bench warrants, and probation revocations. (*Id.* at 91-2.) Also weighed were Smith's employment, that he successfully obtained a degree while incarcerated, his family ties, and that he is a lifelong resident of the area. (*Id.* at 92.) On balance, the Magistrate Judge concluded that Smith's prior convictions, violent conduct, and failures to appear were not recent enough to establish a present risk of nonappearance or danger to others. (*Id.* at 93.) At the conclusion of the hearing, the government objected to the court's determination that it had failed to meet its burden. (*Id.* at 99.)

### C. Parties' Positions on Appeal

The parties maintain their respective positions on appeal and focus primarily on whether, and to what extent, the Court should consider the number of years between Smith's last offense, that being Aggravated Robbery in 2013 and for which he was released in early 2021, and the instant charge of being a felon in possession of a firearm and ammunition.

II. **Analysis**

Title 18, United States Code, Section 3145(a)(1) provides in pertinent part as follows:

> If a person is ordered released by a magistrate judge, *** the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the conditions of release. The motion shall be determined promptly.

District courts review a magistrate judge's release or detention order *de novo*, meaning that the district court makes an independent determination as to whether any condition or combination of conditions can reasonably assure the defendant's appearance or the safety of the community. *United States v. Johnson*, 2022 U.S. Dist. LEXIS 127146, at *4-5 (N.D. Ohio July 18, 2022); *United States v. Trent*, 2022 U.S. Dist. LEXIS 2339, at *4 (N.D. Ohio Jan. 5, 2022).

Under the Bail Reform Act ("Act"), "a defendant may be detained pending trial only if a judicial officer 'finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community[.]'" *United States v. Stone*, 608 F.3d 939, 947 (6th Cir. 2010) (quoting 18 U.S.C. § 3142(e)). The Act sets out factors that provide "the framework for the district court's analysis as to whether release pending trial is proper." *United States v. Williams*, 2020 U.S. Dist. LEXIS 86814, 2020 WL 2529356, at *3 (E.D. Tenn. May 18, 2020). Those factors are:

> (1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involved a minor victim or controlled substance, firearm, explosive, or destructive device;
>
> (2) The weight of the evidence against the person;
>
> (3) The history and characteristics of the person, including –
>
> > (A) The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court

proceedings; and

(B) Whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

The government bears the burden of proving risk of nonappearance by a preponderance of the evidence, *United States v. Hinton*, 113 F.App'x 76, 77 (6th Cir 2004), and danger to others by clear and convincing evidence, *Stone*, 608 F.3d at 946 (citing 18 U.S.C. § 3142(f)(2)(B)).

As part of its *de novo* review, the Court has reviewed the following:

1. The Complaint and Affidavit (Doc. Nos. 1, 1-1);
2. The Pretrial Services Report and Recommendation (Doc. No. 8);
3. The Detention Hearing Transcript (Doc. No. 16);
4. The Government's Motion for Revocation (Doc. No. 17);
5. The Defendant's Response in Opposition (Doc. No. 20); and
6. The Government's Reply (Doc. No. 21).

Because the Court concludes that the government met its burden of proving Smith presents a significant risk of flight by a preponderance of the evidence, the Court need not address whether the record separately supports a finding that the government met its burden of proving that Smith's release presents a danger to any others by clear and convincing evidence.

### A. Nature and Circumstances of the Offense Charged

While not an offense for which detention is presumed, that the offense allegedly involved a loaded firearm and more than approximately 40 rounds of ammunition is an offense

characteristic the Court must consider. *See* 18 U.S.C. § 3142(g)(1). This factor weighs in favor of detention.

### B. Weight of the Evidence

This factor considers the evidence of risk of flight or danger to others and is not a determination of guilt. *Stone*, 608 F.3d at 948. Crediting the affidavit for purposes of assessing the government's motion, Smith acknowledged possessing the firearm even though the law forbids him from doing so. (Doc. No. 1-1.) Further, by his own admission, he obtained the firearm in about July 2022, so only about six months after being released from supervision. (*Id.*; Doc. No. 16 at 81.) The short timeframe between his most recent release from supervision and the charged offense suggests that prior terms of incarceration and supervision have not prompted a respect for the law or Court orders. This factor weighs in favor of detention.

### C. History and Characteristics of the Person

Smith has been a lifelong resident of the area and has been able to maintain stable employment. He has been in a relationship with his girlfriend for more than 20 years. They have a child together and another child on the way. Smith is an involved father and continues to provide care and support for his girlfriend. He has also remained sober since 2013. (Doc. No. 20 at 115.) These facts suggest release would be appropriate. But the Court must also consider Smith's past conduct, criminal history, and record of not appearing at court proceedings as ordered. *See* 18 U.S.C. § 3142(g)(3)(A).

It is undisputed that Smith's record involves crimes of violence. It is also undisputed that his record includes numerous failures to appear, bench warrants, and probation revocations. The parties also do not dispute that Smith's most recent instances of incarceration and probation were terminated early.

The parties' dispute largely hinges on the weight to be given the period between Smith's 2013 conviction and the present charge.[3] The government argues that Smith's argument that these instances are too old to be relevant "ignores the fact that for 7.5 years of the 9 years and 4 months since Defendant was sentenced for the 2013 Aggravated Robbery, Defendant was in prison with no opportunity to commit additional crimes" or fail to appear. (Doc. No. 17 at 106.) And using the date on which Smith was found in possession of the loaded firearm leads to the conclusion that Smith returned to criminal activity within two years of his release. For the government, when considering the entirety of Smith's criminal history, the most significant periods of law abidingness are the same periods in which Smith was incarcerated.

Smith argues that his success during the years he was incarcerated, including obtaining a degree, his subsequent employment history, and family ties mitigate against detention. He continues to argue that the intervening years demonstrate that he no longer poses a risk of nonappearance, or certainly not to the degree that would preclude conditions of release. To his mind, any detention order here would be tantamount to a declaration that all persons charged with being a felon in possession would be detained.[4]

It is accurate to say that Smith's criminal history largely predates 2013. But he was incarcerated for many of the years he relies on to show that he no longer poses a risk of nonappearance. Compliance while incarcerated does not carry the same weight as compliance

---

[3] The Court notes and has considered Smith's assertion that he has not had any failure to appear since 2008. (Doc. No. 20 at 113.) But the Report reflects that on May 9, 2009, he was engaged in trafficking cocaine, a charge to which he pleaded no contest and, on May 20, 2013, was sentenced to two years of community control. (Doc. No. 8 at 47.)

[4] Congress did not include Section 922(g)(1) offenses as a presumptively warranting detention. *See* 18 U.S.C. § 3142(f). The suggestion that a detention order under these facts would amount to a declaration that all persons charged with this offense are detained seems to ignore facts unique to Smith, including but not limited to Smith's criminal history, numerous failures to appear, and the alleged recency with which he returned to criminal conduct after being released from supervision on February 28, 2022.

during periods of release.

The Court must also consider how Smith appears to have conducted himself since his supervision was terminated on February 28, 2022. And while the Court notes his judicial release and early termination of probation, Smith's conduct since then does not demonstrate a recent ability to comply with court orders. The information presently before the Court is that Smith admitted purchasing the firearm in July 2022 – only six months after his supervision was terminated. Also, Smith began living with his girlfriend after being released from state custody in March 2021. It has been acknowledged that Smith's girlfriend kept firearms in their home. Whether firearms were present when he was released in March 2021 or obtained some time thereafter is not known. What has not been disputed, though, is that Smith lived in a home with other firearms during the intervening two years.

Overall, this factor weighs in favor of detention.

### D. Nature and Seriousness of the Danger that the Release Poses

Considering the record as a whole, this factor weighs in favor of detention. While mindful of the continued presumption of innocence as to the charged offense, the Court must still evaluate the proffered evidence and arguments in the context of pretrial release. Here, that evidence includes Smith's alleged return to criminal activity, that being possession of a loaded firearm and ammunition, within approximately six months of his last term of release. In assessing whether home confinement or location monitory would sufficiently address these concerns, the Court notes that these conditions only identify where a person is, not what they are doing. And here, given Smith's significant number of bench warrants for failing to appear before other courts and the apparent brevity between the termination of his supervision and the charged offense, the Court concludes that the proposed conditions would not assure Smith's

compliance with Court orders or appearance as ordered by this Court.

### III. Conclusion

For the reasons stated above, the government's motion is GRANTED (Doc. No. 17), and the defendant is hereby remanded to the custody of the U.S. Marshal for pretrial detention.

**IT IS SO ORDERED.**

_____
BRIDGET MEEHAN BRENNAN
UNITED STATES DISTRICT JUDGE

**Date**: January 30, 2023